## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| THERESA L. (LACHAPELLE) MATHENY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:04-CV-609 |
| | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, Theresa L. Lachapelle Matheny ("Plaintiff"), appeals the denial of her application for Social Security Disability Income Benefits ("DIB"). She challenges the Administrative Law Judge's ("ALJ") finding that she was not disabled within the meaning of Titles II and XVI of the Social Security Act ("Act"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff applied for DIB on April 27, 2001. On March 22, 2001, she protectively filed a claim for Social Security Income ("SSI"). She alleged disability beginning December 21, 2000. After her application was denied initially and on reconsideration, Plaintiff requested a *de novo* ALJ hearing, which was held on December 11, 2003. On March 25, 2004, the ALJ held that Plaintiff was not disabled within the meaning of the Act, and Plaintiff requested Appeals Council review. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. §§ 405(g).

## I.   BACKGROUND

Plaintiff was thirty-eight years old at the time of the ALJ's decision and had a high school

education with one year of college (Tr. 18).  Her past relevant work experience includes

employment as a department manager and a cashier (Tr. 18).  Plaintiff stopped working on

September 16, 2003 (Tr. 49-50).  Plaintiff claimed that she could no longer work due to problems

with diabetes and heart problems (Tr. 109).

Plaintiff testified that she suffered from diabetes and neuropathy and that her feet ache

after standing for two to four hours in an eight-hour period (Tr. 21).  She testified that she did not

drive much because she had panic attacks while driving, could not reach back to get her seatbelt,

and had problems turning her head to see blind spots (Tr. 21).  Plaintiff further testified that she

needed to lie down for two to four hours every day and that she could not reach with her right

arm (Tr. 22).

The ALJ found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled an impairment and that Plaintiff was capable of performing a

modified range of light work (Tr. 26).  Further, the ALJ found that the exertional requirements of

Plaintiff's past work exceeded her RFC such that she was no longer capable of performing any of

her past work (Tr. 26) but that she was not under a disability because she remained capable of

performing a significant number of jobs (Tr. 27).

### A.   Medical Evidence

Plaintiff treated with Dr. John Larson, her family physician, from June 2000 until June

2001 for anxiety and situational depression.  He recommended that she be placed on leave in

March 2001.  In May 2001, he extended her disability for another two months due to her

emotional problems.

In May and June 2001 Plaintiff was treated at Madison Center for major depressive disorder, dysthymic disorder, and panic disorder.  Global Assessment of Functional ("GAF") scores of 50 and 51[1] were assigned to the claimant.  Claimant had an abusive husband that she still had nightmares about and was occasionally tearful and had difficulty looking at the positive sides of her life.  However, she was also noted to be very insightful and neatly dressed.  In addition, Plaintiff was taking college classes, had meaningful interpersonal relationships with her acquaintances, bowled on Thursday nights, and was not actively considering suicide.  In July 2001, Plaintiff's therapist, Rebecca Unterhanrer, LCSW, stated that Plaintiff had multiple stressors in her life that made it impossible for her to succeed in work in the past number of moths.

In August 2001, the Plaintiff underwent a mental status examination at the request of the Social Security Administration.  Harold Smith, Psy.D., diagnosed plaintiff with generalized anxiety disorder and depressive disorder.  He assigned Plaintiff a GAF score of 50.  He reported that Plaintiff exhibited marginal hygiene and grooming, no abnormal movements, an anxious affect, fearfulness, no suicidal or homicidal ideation, and no symptoms of delusions or hallucinations.  He added that Plaintiff was oriented.  Plaintiff reported that she sometimes did not take a shower for three or four days but added that she liked to bowl and play on the

---

[1]The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed. 2000) ("DSM-IV"), published by the American Psychiatric Association.  A GAF score 50 is on the borderline between serious and moderate symptoms.  GAF scores between 51 and 60 indicate moderate symptoms (e.g., circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning as evidenced by few friends and conflicts with peers or co-workers).  *DSM-IV* at 32-34.

computer.  She also stated that she did not get along with her neighbors but that she had two or three friends.

In December 2001, Plaintiff was treated for chest pain.  She was noted to be oriented and not depressed.  In March 2002, Wai Lee, M.D., a cardiologist, also noted that Plaintiff was oriented and not depressed.  In October 2002, Plaintiff underwent an outpatient psychiatric evaluation at Madison Center, where Dr. Donald Graber diagnosed Plaintiff with bipolar disorder.  Dr. Graber assigned a GAF score of 54.  Dr. Graber noted that Plaintiff was tearful and that she exhibited a very sad effect, psychomotor retardation, marked lethargy, and a hopeless and helpless despondent presentation.  He added that she was poorly groomed.  Plaintiff told Dr. Graber that she had periods of an elevated mood with alternated with lows where she would withdraw and stay in bed.  Dr. Graber further noted that Plaintiff had at least an average if not above average intelligence and that she did not demonstrate much tendency toward introspection or psychological insight but he added that she was cooperative.

In November 2002, Plaintiff told Dr. Graber that she was no longer having any major mood swings since starting Lithobid.  She complained of frequent urination and mild tremors.  Dr. Graber felt that Plaintiff was tolerating her medications well.  In December 2002, Plaintiff stopped taking her Lithium for three days and almost immediately became manic; once she resumed her medication, her mood stabilized.  Dr. Graber described Plaintiff as euthymic.  In January 2003, Plaintiff complained of occasional panic attacks; however, Dr. Graber described her as euthymic.  Plaintiff reported that her work and her relationship with her boyfriend were going well.  Dr. Graber instructed Plaintiff that she should take Xanax when she was having panic attacks in the future.  In March 2003, Dr. Graber described Plaintiff as being quite rational

4

and reasonably calm.  Although Plaintiff stated that her mind still raced at times and that she had

trouble sleeping, she added that she rarely needed to use the Xanax.  In May 2003, Plaintiff told

Dr. Graber that she was doing fine and that she was not experiencing any side effects.  In August

2003, Dr. Graber opined that Plaintiff's mood swings were under pretty good control and that she

was not experiencing any significant or severe side effects from her medications.  Plaintiff was

admitted to the hospital for chest pain in August 2003; she was noted to be oriented and alert and

not depressed.  In December, 2003, Plaintiff was assigned a GAF score of 50 at Madison Center.

Plaintiff also has ischemic heart disease, diabetes mellitus, and right shoulder problems.

## B.    Vocational Expert Evidence

Christopher Young, a vocational expert ("VE"), appeared and testified at the hearing.

When asked whether jobs existed in the national economy for an hypothetical individual of

Plaintiff's age, education, past relevant work experience and residual functional capacity

("RFC"), the VE testified that assuming the hypothetical individuals's specific work restrictions,

she would be capable of making a vocational adjustment to other work, including work as a

teacher aide (600 jobs exist in the region), office helper (300 jobs exist in the region), cashier

(500 jobs exist in the region), information clerk (100 jobs exist in the region), customer service

representative (500 jobs exist in the region), or parking lot attendant (125 jobs exist in the

region).

Plaintiff's attorney asked the VE to comment on the Plaintiff's ability to work.  The VE

testified that the Plaintiff's mental impairments would preclude her from performing any work that

exists in significant numbers in the national economy because she was assigned GAF scores in the

50s.  The VE also stated that because the Plaintiff needs to lie down for two to three hours per day and because she has significant problems with standing, walking, and using her right upper extremity, she would not be able to perform any work that exists in significant numbers in the national economy.

**C.      The ALJ's Decision**

The findings of the ALJ were as follows:

1.      The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through March 3, 2004.

2.      The claimant has engaged in substantial gainful activity at some points in time since the alleged onset of disability.  She stopped working completely in September 2003.

3.      The claimant's ischemic heart disease, diabetes mellitus, and right shoulder problems are considered "severe" based on the requirements in the Regulations 20 CFR 404.1520(c) and 416.920(b).  She does not have any severe mental impairments that have lasted or are expected to last for twelve consecutive months.

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      The undersigned finds that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The claimant has the residual functional capacity to perform a limited range of light work.  She is not able to lift anything over one or two pounds above shoulder height and even at that weight she cannot perform this action repeatedly.  In addition, the claimant is not able to lift more than twenty pounds at or above waist level and she cannot lift more than thirty-five pounds from the floor to waist level.  She is also able to sit or stand/walk for a total of six hours each in an eight-hour period.  She is not able to perform any overhead work with her right arm at all.

7.      The claimant is unable to perform any of her past relevant work (20 CFR 404.1565 and 416.965).

8.      The claimant is a "younger individual" (20 CFR 404.1653 and 416963).

9.      The claimant has a high school education (20 CFR 404.1564 and 416.964).

10.     The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR 404.1568 and 416.968).

11.     The claimant has the residual functional capacity to perform a somewhat reduced range of light work (20 CFR 404.1567 and 416.967).

12.     Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a teacher aid (600 jobs exist in the region), office helper (300 jobs exist in the region), customer service representative (500 jobs exist in the region), or parking lot attendant (125 jobs exist in the region).

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).


## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one.  If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court.  42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687,

689 (7th Cir. 1994).  The court must examine the evidence that favors the claimant as well as the evidence that supports the Commissioner's conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## III.   DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act."  *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).  Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status.  *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979).  The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired.  *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th

8

Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971).  "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds*, 445 F.2d at 39.  Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982).  Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that she was disabled during the period in which he was insured.  *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled.  As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.  *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled.  *Clifford*, 227 F.3d at 868.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.*  The initial

burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

When sequential analysis proceeds beyond Step Three to Steps Four and Five, and ALJ must make a RFC assessment.[2]  That is, an ALJ decides whether an applicant, notwithstanding severe impairment, retains physical and mental ability to perform activities generally required by competitive, remunerative work.  *See* 20 C.F.R. § 404.1545; Social Security Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).  The judge assesses the applicant's physical, mental, and sensory abilities, evaluates how they apply to the applicant's work-related functioning, and finally considers whether the applicant can sustain work-related activities in a work setting on a regular and continuing basis.  *Id.*

The Plaintiff disagrees with the ALJ's finding that she was not disabled within the meaning of the Act.  Plaintiff argues that the ALJ's decision is not supported by substantial evidence.  In particular, Plaintiff argues that the ALJ's assessment of Plaintiff's mental health issues is flawed because the ALJ misunderstands the psychiatric evidence.  Plaintiff further disagrees with the ALJ's determination regarding her credibility as it relates to side effects of the numerous medications she takes.  Finally, Plaintiff argues that the ALJ ignored the evidence that she was no longer engaged in any substantial gainful activity after September 16, 2003.

**A.      Mental Health**

Plaintiff argues that the ALJ misunderstands the psychiatric evidence.  Plaintiff argues that the ALJ assumes that because the Axis Diagnosis and GAF scores are issued at periodic intervals, this is evidence that the mental health problems were not longstanding and not severe

---

[2]RFC is defined as "what you can still do despite your limitations."  20 C.F.R. § 416.945(a).

over the time between the intervals.  However, Defendant asserts that GAF is not included or

discussed in the Agency's regulations as a Listing requirement.  In addition, according to

Defendant, because the GAF rating is just one tool used by clinicians to develop the clinical

picture of an individual's functioning, it cannot be used in isolation from the rest of the evidence

in making a disability decision.

The GAF scale measures a "clinician's judgment of the individual's overall level of

functioning."  Am. Psychiatric Assn, *Diagnostic and Statistical Manual of Mental Disorders*, 4th

ed., Text Revision 32 (2000).  But the GAF scale is intended to be used to make treatment

decisions, *id.* at 32, and nowhere do the Social Security regulations or case law require an ALJ to

determine the extent of an individual's disability based entirely on his GAF score.  *See Howard*

*v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2000) (GAF score may assist

ALJ in formulating claimant's RFC but is not essential).  Here, the ALJ reviewed the entire

medical evidence to determine the extent of Plaintiff's disability.  The ALJ found it reasonable to

assign great weight to the state agency psychologist's opinion that Plaintiff did not have a severe

mental impairments because the opinion was consistent with the record as a whole.  The ALJ

considered the evidence from Plaintiff's training coordinator at Wal-Mart did not indicate that

Plaintiff was having any significant difficulties due to her mental impairments.  Plaintiff was able

to live independently, bowl, and take college classes.  The ALJ reasonably determined that the

Plaintiff is, at most, only mildly limited by her mental impairments in her ability to perform

activities of daily living, maintain social functioning, and sustain concentration, persistence, or

pace.  Accordingly, Plaintiff's first argument fails.

**B.** **Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ improperly evaluated her credibility with respect to her testimony of a need to nap a couple of hours a day.  Plaintiff argues that the multiple medications she takes causes drowsiness and fatigue and there existed no valid reason for the ALJ to doubt her on this issue.

Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference.  *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000) citing *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997).  An ALJ's credibility determination shall be affirmed so long as the ALJ gives specific reasons for the finding that are supported by the record.  *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

Here, the ALJ adequately explained, based on substantial evidence, why he did not entirely credit Plaintiff's allegations.  The ALJ considered Plaintiff's medications and concluded that they did not warrant limitations beyond those identified in his RFC finding.  The ALJ noted the lack of medical treatment records to support Plaintiff's allegations.  In particular, the ALJ noted that Dr. Graber reported in May 2003 that Plaintiff did not have any side effects from Lithium.  Additionally, no physician of record opined that Plaintiff needed to nap every day.  Moreover, Plaintiff's training coordinator at Wal-Mart indicated that Plaintiff was not having any significant difficulties at work and did not receive any special accommodations when she worked.  Thus, the ALJ's determination that Plaintiff's assertion of disability due to side effects from her medications was not entirely credible is supported by substantial evidence.

This Court concludes that the ALJ's determination is supported by substantial record

evidence, is not "patently wrong," and will not, therefore, be disturbed.  *See Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005).  For all these reasons, Plaintiff's arguments fail.

**IV.   CONCLUSION**

Based on the foregoing, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: November 2, 2006                    **S/ ALLEN SHARP**
                                          **ALLEN SHARP, JUDGE**
                                          **UNITED STATES DISTRICT COURT**